We will hear argument first in number 21-2097, Borusan against the United States. Ms. Mendoza? Good morning, Your Honor. Good morning to the panel. To please the court, my name is Julie Mendoza. And I'm with the law firm of Morris, Manning, and Martin appearing on behalf of Borusan. I'd just like to start, Your Honor, with the point that the issue here before the court today is the proper interpretation of the anti-dumping law. It's the proper interpretation of the words United States import duties in the anti-dumping statute. And the question here is whether Section 232 duties fall within the scope or outside the scope of a United States custom duty, and therefore should or should not be deducted from US price. United States import duty. Yes, United States. I'm sorry, Your Honor, yes, United States import duty. Commerce itself, after notice and comment in an earlier case, stainless steel wire rod, developed a framework for analyzing this issue, in that case, in the context of Section 201. And what Commerce held fundamentally in that case, after notice and comment rulemaking, which was sustained by this court, what Commerce said was there is a clear distinction between a normal customs duty, which is collected in order to raise general revenue for the United States, and which is imposed on a permanent basis, or at least until Congress decides to change it. In contrast to this, what the Commerce Department said was a special duty was a remedial duty, a duty that was intended to remedy injury to the industry, and which was temporary. In other words, it was temporary because it was intended to last as long as the injury and as long as the remedy was needed. And so that clear distinction permeated the entire stainless steel wire rod case. In every single analysis they did of every factor, remedial, temporary, whether it constituted a double and position of a remedy, they always considered that conflict, that clear dividing line between a normal customs duty and a special duty. Now, how Commerce erred here, Commerce erred here not because it failed to follow the framework. It did. It said it was. And in fact, it did give lip service to the framework itself. But what it didn't do was actually follow that analysis. And what I mean by that is they didn't employ the same analysis and approach to the question of these duties. And they didn't address specifically how they were like to their due duties were like normal customs duties, which brings me to a fundamental point. And can you just state again what you think the definition of normal in your use of the word is? Normal in my word is Commerce's word, which was. It's not a statutory word, right? No. It's an interpretation by Commerce of the legislative history of the Anti-Dumping Act as including a differentiation or an understanding that certain duties were normal customs duties while other duties, in that case, specifically anti-dumping duties. OK. And what makes a duty normal, including one that might have been around for 35 years? At least under Commerce's determination relying on the legislative history, they said that those were duties that had been adopted by Congress, that stayed in place permanently, and that were intended to be remedial. I'm sorry, the opposite. I'm very sorry, Your Honor. Normal duties were put there by Congress. They remained there until Congress changed them. And their purpose was solely to raise general revenue for the United States. That was the definition that Commerce adopted. Which of those are subtracted out, the normal duties or the special duties? What Commerce said in the Stainless Steel Wire Rod decision was that Commerce should deduct out normal duties. In other words, the duties that Commerce has always deducted out are normal duties. They're the statutory HTS duties. What they said was that because Congress had recognized the distinction that not all duties were to be considered normal customs duties, Congress recognized that certain duties were special duties. In fact, in the legislative history, Commerce used that term. Congress used that term. And so Commerce, in interpreting it, said we have to employ the same analysis here in deciding between what a Section 232 duty is. In order to analyze it, we have to use that same framework. What is the role of the president in this circumstance in identifying what kind of duty we're talking about? I mean, if you look at the Proclamation 9705, it's characterized as 25% ad florum was an additional rate of duty. How does that factor into your analysis? I guess what I was trying to emphasize at the beginning is that the president's authority under Section 232 to impose any duties he feels are necessary is totally separate from the issue here of how Commerce should decide whether to deduct those duties from US price. I think what the government and Wheatland attempt to do is to use the president's reference to what it actually says, which is ordinary duties referenced as opposed to ordinary duties. If you go back and you look at the annex of the Proclamation 9705, and if you look at what is actually said there, the only thing that's said there are two things. One, ordinary customs duty reference is to distinguish it from special duties, like GSP duties. And secondly, it says you shall collect it in addition to any other duty, dumping, countervailing duty, or anything else. So what the president has decided is that these duties, these Section 232 duties, must be collected in addition to any other duties that are in effect. Aren't we just looking at Proclamation 9705? We're not looking at every Section 232 duties. I mean, Section 232 leaves it up to the president to decide what the remedy will be. Absolutely. So I don't see where we're looking at every Section 232 duty, just the one. No, no. No, no, I don't think we are looking at every Section 232 duty. I'm sorry. Yeah, I apologize. I apologize. No, I was referring, actually, to the annex to 9705. But could you also answer Judge Stoll's question regarding Appendix 48? She was looking at a different portion, I believe. And obviously, Judge Stoll collected it as well. I'm sorry? Can you look at Appendix 48, just to answer Judge Stoll's question, as opposed to skipping straight to the annex? I wanted to make sure. Well, the annex is part of it, right? I understand, but if you'd like an answer on Appendix 48, then we can go to the annex, too. Oh, OK. And the annex itself says that they will impose Section 232 imports, right? I mean, that's what it's saying here. That, in fact, I would say it's the annex. Are you reading from the annex now? No, I'm not. I'm reading from the proclamation itself. Appendix page 48, under item 2, I assume? Right. The end of that paragraph. This rate of duty, which is in addition to any other duties, fees, exactions, and charges applicable to such imported steel art. Is that what you were looking at? Yes, that's what I was wondering about. Can you address that? And then you can turn to your other argument. Sure, sure. So it's 2, right? Which is referring, in the middle of it, to the annex. But I'll stay with what it says in paragraph 2. It says that it will be collected in addition to any other duties, fees, exclusions, and charges. Absolutely. Our position is you will collect Section 232 duties in their entirety on import. And you will collect anti-dumping duties in their entirety on import. And that's what the president said. He said you must collect them both. Even though, in your view, by collecting the first, you reduce the second. Well, Your Honor, I don't think what we had said in our brief was we, in fact, do not believe that it's proper to assume, with a special duty like 232, that those duties are immediately being reflected in the price that an exporter is charging. Right, but do I remember right that in this particular order, the determination was that the duty was reflected in the price and it was only because it was reflected in the price that Commerce said we will subtract it? In this case, there is another case in which the court has looked at the issue of whether a 232 duty is in or outside the price. But certainly, is included or not in the price? Am I remembering correctly that in this particular case, for the six weeks or so of the period of review in this administrative order, that Commerce said that the 232 duty was, in fact, reflected in the price paid by, I guess, the importer to the producer exporter. And it was for that reason that it was going to subtract that amount in this case. No? I do not recall that, Your Honor. I know that there was another issue in the court appeal originally that concerned whether or not there were Section 232 duties in certain sales that were made from inventory by Borisohn. In other words, there was a question about the timing of whether the sales that entered during that six-month period were actually entries that were made after the duties were imposed. That was another issue in that court appeal before Judge Rastani. She sent it back to Commerce on remand. On remand, Commerce made the decision that, in fact, the duties had not been collected because of the timing in which those entries had come into the United States. That was a factual decision, though, and whether the record evidence supported it. But it didn't go to the broader issue here of whether or not, under the interpretation that Commerce had given in stainless steel wire rod, of how you would distinguish a remedial duty from a normal customs duty. That was not part of the decision here. In other words, what we argued here is that it's not immediately apparent that there is a full pass-through of the Section 232 duty, right? So getting back to where I think we were talking about this paragraph two, how is it that a section that says this is supposed to be in addition to the other duties could be satisfied if you're going to essentially subtract out most or all of it by, or eliminate most or all of the anti-dumping duty by not subtracting the 232 duty out of the US price part of the subtraction? Your Honor, I guess what I would propose here is just that, to the plain meaning of the words, this duty shall be collected in addition to, means that I don't care what other duties you have that are imposed on your imports. You have countervailing duties, 337 duties, whatever it is. I don't care about that, because you're going to have to pay those. Even though there were these steel duties in place for 35 years, and the President determined that notwithstanding that these duties were in place for 35 years, there was a national security problem. He's going to impose a duty on this. And most of that will actually not change, possibly, $1 in the net payment. That's the remedy you think that the President adopted when he said this is supposed to be on top of? Honestly, Your Honor, I guess our position would be that I don't believe that the President considered the proper treatment of these duties under the anti-dumping law. I don't think that you can assume that he knew how the anti-dumping law works specifically to deduct these duties, if they are considered special duties, from US price. I think the President was concerned about, not about what prior remedies had been imposed, because he's very clear that he thinks none of those have been sufficient, right? So he wants more. He wants more. And you're going to say, it might not actually be any more, because we're going to just subtract over on the left side what we're imposing on the right side. I think if the President had expressed a clear intent that he, for example, wanted a two-tiered duty, one on imports subject to dumping, and one that's on imports that aren't subject to dumping, that's fine. He could have done that. But here, I think what we're dealing with, really, is commerce's own statute, the AD statute. And I think there would have to be a very high showing that the President actually intended to somehow, and whether, in fact, has the legal authority to modify the dumping law. Are you writing out the words, or almost crossing out the words, in addition to? I'm just trying to understand your position. I mean, I guess think about it this way, right? Think about it this way. If an importer brings a product into the United States, what is he going to pay? He's going to pay the dumping duties he owes, if he owes countervailing duties, if he owes any other duties, 337 duties, whatever else he owes, he's going to pay those. And in addition to those, he's going to impose Section 232 duties. He's going to pay both. That's what the President meant. The President says, and I think if, just for a moment, you'll look at the annex, you'll see how the President is hoping to achieve this. I mean, when he says, sets forth the ordinary customs treatment, he's specifically distinguishing the no special rates of duty, which are like GSP and other things like that. He's saying, basically, look, you don't get a special rate of duty under this annex. You pay whatever is in the annex about what you owe under Chapter 99. Then he says, moreover, if you're paying anti-dumping, countervailing, any other duties or charges applicable to such goods, they're going to continue to be imposed. They're going to be imposed in addition to. So to assume that the President, in that point in time, was dealing with something more than his own authority to impose whatever he felt was necessary is, to me, I don't think the President was concerned about how, or I don't see any evidence that the President expressed any concern about how the Commerce Department was going to do the calculation of the dumping margin. And I think the reality is that in cases where you have normal customs duties, people expect to incorporate those duties into their prices. But when you have a rapidly changing scene like this, where the President is announcing the duties and then imposing them, or in the case of Turkey, he's imposing them and then he's removing them, there isn't the same ability to accept a 100% pass-through. I mean, contracts have already been signed. You know, material was on the water. So it's not like there's a 100% pass-through here, OK? The duties come into effect, and the price goes up to reflect those duties. I don't think that's realistic to expect. You have exhausted your time, and we will restore the rebuttal time. Oh, sorry, Your Honor. No, it's not your fault. Good morning, Your Honors, and may it please the Court. The key question presented to the Court in this case is, what is the purpose of 232 duties? This question controls the dispositive statutory issue of whether Section 232 duties are US import duties for the purposes of the anti-dumping statute. Can I ask you this question? Why should the answer to that, why should there be a single categorical answer to the question of 232 duties? And same on the 201 side. Why should it not depend on the particular presidential imposition, since the president is in full control of the shaping of the 232 duty? And shouldn't the president be able, by clear enough language, to indicate that I want this imposed to use the 9705 language in addition to, or taking the 2002 or 2003, the Wheatland order, the old Wheatland order, where the president says nothing at all about it? Why should it be categorical? I don't understand that. Well, because the language that is controlling the question is actually coming from the anti-dumping statute, 1677A, which is categorical towards US import duties. So the question becomes whether or not section 232. Why isn't it the case that under both 232 and 201, 203, the president can say, the duty that I will impose here, I will now define as follows. Define in such a way that is supplemental to the amount to be paid under 1677A, or not supplemental of the amount, so that the president gets complete control over this. Well, yes, Your Honor. Under section 232, the president does have complete control. So I guess, hypothetically, it's possible that a remedy could be crafted in that manner. But as the court indicated earlier, this was a case where it was explicit that the remedy being crafted was in addition to. And that's consistent with both the statutory intent of section 232, as well as the anti-dumping statute. So the question of whether or not it was appropriate to include the section 232 duties starts with the anti-dumping statute. But turning back to 232, if I'm understanding the court's question properly, yes, the president does have broad authority to impose. It seems to me that the, just speaking for myself, the most challenging piece of this case is to think about how it relates to the earlier case. One way to think about that is to look not at 232 as a indivisible unit in which there's a single answer regardless of what action is taken under 232, and similarly under 201, but to look at the two individual proclamations. 9705, very naturally read to say it has to be on top of, and therefore you're going to subtract so you don't net out to zero or close to zero. There was no such thing in the presidential proclamation in the 2003, 2004, whatever it was, case. So looking at individual proclamations, there's a perfectly easy distinction. The president decided what the relation of those two things was to be different in the two cases. Why should we not look at the case that way? I think it's possible to look at the case that way, but I think it's also appropriate to look at the statutory underpinning of where those proclamations came from. In talking about the Wheatland. One reason in Wheatland one might read President Bush's proclamation at issue there, which says nothing about relation to other duties, unlike 9705, which does, is that there was a background from the little bit of legislative history in 1974, SAA in 1994, that suggested that the president would often view what he was doing under 201, 203 in relation to other duties. And therefore, now the Commerce Department, which is an executive branch under the president's authority as the government's briefs in that case were at pains to point out repeatedly, the president, through the Commerce Department, was effectively saying, this is how I understand what the president did in the 201, 203 proclamation there. And so the president was actually making the decision about the relation between those. Similar here, opposite relation, but it's proclamation specific. I think the proclamations certainly give effect to what's going on. But there is a distinct statutory purpose between 201 and section 232, and that's what those proclamations were essentially fleshing out. In the Wheatland case, the difference there was that the government was proceeding from the point of view that in the anti-dumping statute, this term US import duties was going to be very broad and was going to encapsulate most, if not all, import duties. And so the question of whether or not to deduct section 201 import duties became whether or not those duties were so similar to the purpose of the anti-dumping statute that it made sense that they should be deducted to avoid this issue of double remedy. In this case, we don't have that issue because the section 232 duties, as the- Can you tell me why I'm having some trouble understanding what the distinction is in both the 201 situation and the 232 situation, though for different kind of ultimate purposes. One has to do with national security, the other doesn't. But they both have to do with a hurting domestic industry. And it's hurting because of imports. Why isn't that enough to indicate that the point of the duty is, in some way, the same to protect the domestic industry? Well, as the trial court indicated, there is a broad, in a broad sense of the term, that yes, in this case, there is a remedial effect. But the difference is that section 232 does not require that there be a harmful importation practice going on in order for the duty to be levied. Section 201 does. I'm sorry. How could imports adversely affect national security if they're not harmful on the domestic? Well, the idea being that it's a question of whether or not there's an unfair trade practice. And that's what we're looking at in the anti-dumping statute, essentially whether or not a product is being dumped in this country. I thought we were discussing how to compare 201 to 232, neither of which requires an unfair trade practice. The 232 duty can be imposed. Like the example that the trial court gave, which I think is apt, is you could have a situation where, say, for example, there's a nascent US industry. Maybe there are imports coming in, but it's not necessarily being harmed in that there is not an unfair trade practice. The product isn't being dumped into the country. But the executive makes a determination that in order to help develop that industry, he's going to take some type of action, a tariff or other action, in order to bolster that industry. And I think one of the other key differences between 201 and Section 232 is that 201 contemplates the imposition of safeguard duties, whereas 232 is very broad in what the president can impose. For example, the president could impose an entirely or a total ban on an import of a product in order to protect and develop the domestic industry for national security purposes. So really what we're looking at in terms of Wheatland versus this case is that Wheatland was a situation where, again, the government was looking at whether or not the 201 safeguard duties were so similar to the anti-dumping duty in their purpose that they should properly be considered special duties, and therefore included in the US price. So in other words- Do you think it's open to us to say we don't think that our earlier decision, perhaps not even Commerce's decision in Wheatland, but at least our decision, required a categorical answer to the question of 1677A treatment of all 201 duties, but rather answered only the question whether the particular 201 duty that President Bush imposed there was one that was going to be treated under 1677A as something to be subtracted or not? I think that the response to that is it is conceivable that the president, through Commerce, could structure a duty under 232 to work in tandem. He could explicitly say the remedy that I've selected is that I'm going to impose a duty, but that it will be deducted. That's within the president's broad authority. The categorical nature comes from that the president would always have the authority to levy the duty or other action, import, ban, or otherwise, on top of the anti-dumping statute. So I guess the answer is yes, it's conceivable it could be done that way, but it wasn't in this case. I'm sorry, I'm monopolizing here, but let me just refocus my question. Forget about 232. I'm thinking about how to read our precedent in Wheatland, which was about the 201 duty. Commerce there, it didn't write a regulation. It gave a rationale in the context of deciding in a particular final order in final determination in that anti-dumping case whether to subtract something or not, a 201 duty or not. That sounded kind of categorical. What I'm asking is, is it open to us to say we will read our Wheatland decision as approving only the proclamation-specific determination by Commerce there, not a necessarily categorical treatment of all 201 or 203 impositions as being of the same nature, so that it is up to the president to decide through the president's proclamation what the relation is going to be? Yes, I think that's a fair reading of Wheatland, Your Honor. I see my time has expired. I have a question. Do you believe that we need to apply Chevron deference for you to run in this particular matter? Well, I think there's no dispute that the term US import duties is ambiguous. I mean, this court found that in Wheatland. So I mean, I think Commerce's interpretation is reasonable. I'm sorry. I don't know if there's more to the court's question there. That's fine. Well, could I just flesh this out? Chevron today may not be what it was at the time of Wheatland. Suppose it is now the case that considerably more than a paragraph or two of work is needed to get to the conclusion that Chevron step one doesn't answer the question. What do we do then? Oh, if we're discussing whether or not it's a Chevron step one or step two question? The ambiguity question of whether that phrase United States import duties is ambiguous or not. Assume there's lots of Supreme Court decisions that have suggested a lot more has to be done to determine whether that's ambiguous or not. Sure. Are you really stuck with the determination that in Wheatland that that term is ambiguous? Well, I certainly think we're relying on the Wheatland decision for that finding that the term is ambiguous. I think in the briefing here there wasn't any dispute over that. Setting that aside, do you think the term is ambiguous? Well, I think that it certainly is undefined as to its scope. I mean, the implication from Wheatland and where that case was being argued from was that the term was very broad and encompassed most, if not all, US import duties. And so Wheatland was a case about why Section 201 shouldn't be included in that term. And so I think sort of bringing that forward here is that, yes, the assumption would be then that Section 232 would be included in the term because, again, there is a breadth to that that I think is quite large. OK. Thank you. Your Honors, good morning. May it please the Court. Elizabeth Drake from Chagrin Associates on behalf of Defendant Apali Wheatland II. I would like to begin by addressing the Court's last question. Obviously, Wheatland's position in that litigation as plaintiff is that the term US import duty was clear on its face and included 201 duties. Wheatland found that it was ambiguous. Whether this Court wishes to re-examine the alleged ambiguity of that term is obviously up to the Court. But the important context for interpreting that term is that 1677A requires the import duties to be deducted from US price because they are not included in normal value. And so the only way to achieve an apples-to-apples comparison and an accurate dumping margin is to ensure that those US import duties, which are not included in normal value, are also not included in export price. Otherwise, excuse me? Why doesn't what you just say apply equally to 201? The difference that I think is most salient. That really is a precedent for us. Question is, perhaps, the scope of the precedent. Yes, Your Honor. And I believe that 201, one factor that weighed against that is that legislative history at the SAA and in the 1974 Act  directed both the Commission and the President to take into account what anti-dumping duties already existed and to set the level of 201 duties in a way that took that into account. So one could read a 201 interpretation more broadly, not proclamation-specific, obviously supported by the lack of language in the proclamation, but also by the legislative history that created the statutory interplay between 201 and anti-dumping. And there's no such background in the 232 statute or legislative history. And so it would not be appropriate to make a categorical decision that 232 duties are always like 201 duties and must never be deducted from export price. And I would add, Your Honors, that in this case, Commerce did find that the 232 duties were included in the export price. And this is at Appendix 1348. Your little numerical example accounts for that, and the government's, not the government's, the other side's does not. Exactly, that's right, Your Honor. And the points that Ms. Mendoza was raising about there's no pass-through or it's surprising, none of these points were raised before Commerce did that. Can you address Ms. Mendoza's point about whether Proclamation 9705, what it implies, at least implies, maybe expressly says, about the relationship between the duty being imposed there and the treatment that should occur under the, what, 31, 32 years worth of anti-dumping duties? Yes, Your Honor. I believe that in Appendix page 48, paragraph 2, it was very clear that the 25% 232 duty was to be in addition to any anti-dumping duties. It was also very clear from the annex that it was supposed to be in addition. If Commerce were to adopt an interpretation that would not allow for the deduction of 232 duties, it would nullify those duties. They would not be, in effect, actually being collected in addition to anti-dumping duties. That would be completely contrary to the plain language of the proclamation. What about, I took it that Ms. Mendoza, at least early in the argument, was making a point about a language used, I guess, by Commerce in the earlier proceeding, the one 20 years ago, about normal versus, is it special or something, which maybe was being equated with statutory versus presidential, or maybe was not. Can you address that? Yes, Your Honor. I respectfully disagree with Ms. Mendoza. I do not believe that Commerce made such a broad, sweeping interpretation. Instead, what Commerce said, and this is at page 19160, oh, excuse me, 19159 of the Stainless Steel Wire determination is, at least some duties implementing trade remedies, including at least anti-dumping duties, are special duties that should be distinguished from ordinary customs duties. Commerce never said that every trade remedy duty is a special duty that can never be treated as a US import duty under the anti-dumping statute. Thank you. Thank you. I believe the language that Mr. Egg was quoting was the language concerning their interpretation of the 74 Trade Act and Congress, and recognizing that at least some duties were special duties. Now, after citing to that, what Commerce did here, and did in Stainless Steel Wire Rod, was to interpret a term in the statute. It wasn't to interpret the meaning of a particular proclamation or a particular type of remedy. It was to interpret the meaning of the term US import duties, United States import duties, in the law, in the law itself. Now, Commerce, the court could walk away from Wheatland. I would say they would also be walking away with the analysis, at least that the Commerce Department articulated they were using here. But it's very important to get to one other point. When the court and Commerce in Stainless Steel Wire Rod said that it would be a double collection of the duties if Section 201 duties were deducted from US price, what they meant by that was that if you deducted them, you collected them once as additional dumping duties, not the dumping duties that had normally been found, right? Because the normal dumping duties that I found are definitely going to be collected with the 232 duty when you bring it in. What the court there was saying, but if you make us deduct those kinds of duties, what in essence you have there is a double remedy, because you are not only affecting what the dumping margin would otherwise be, i.e. you're increasing it by deducting 232 duties, and then you're turning around and deducting 232 duties again on entry. So I think the presumption here, and it's the presumption behind Wheatland's counsel's calculation, is that somehow you're not starting with the same anti-dumping duty. Of course you're starting with the same anti-dumping duty. It's what's being calculated. The only way that you can get to the point of saying somehow that the dumping duty would be greater is if you assume that there's a total pass-through of Section 232 duties into the price. Nobody has said that that's the case here. Nobody has found that that's the case here. So going back again, what Commerce said, and Commerce was concerned about what Congress would think about its interpretation of the anti-dumping law, right? That's what they were concerned about. And they said, there's nowhere where Congress said you should collect this remedy twice. And therefore, since there's nowhere that Congress has said that, it's not the case. Now, Wheatland, in that case, I will tell you, argued that the president had expressed a preference for not I'm sorry, for deducting 201 duties from price. They made that same argument before this court, OK? Right, and the government in its briefing in that case, as I recall, made a big point saying, in effect, you're telling us what the president thinks. We are the president. Right, but all I'm saying is that there's nowhere in the documentation of what the president said. I mean, if we're going to infer what somebody thinks the president said, but I mean, we have this plain language here. Right, but the proclamation in the earlier case said nothing at all. There was a dual legislative history background, 1974 and 1994, if I have the years right, that indicated that often the determination of what duty should be imposed under 201 should take account of anti-dumping matters. And against that background, Commerce came in, presumably with presidential authorization, and said, that's implicitly been done here. And so we're not going to treat them as purely supplemental in the way. And the opposite is the case here under this proclamation. But that's a proclamation-specific determination. It's not 232 is all one thing, 201 is all one thing. Perhaps, Your Honor, but if you're talking about the Section 201 statute, which I believe you are, the overlap between the Section 201 statute isn't just with anti-dumping duties. In fact, the language that the court and Commerce cited in the Stainless Steel Wire Rod was the language that was actually in the Section 201 statute, which refers not just to anti-dumping duties and the need to juxtapose or take them into account. It also refers to Section 337 duties, countervailing duties, as well as remedial duties of all sorts, including, presumably, Section 232 duties, because we believe that it is a remedial duty. So this statutory interplay argument really was only developed in Stainless Steel Wire Rod because they were only dealing with 201 and anti-dumping and all that. But it doesn't mean that the statute itself, if you look at it, doesn't also refer to other trade remedy statutes and the need to take those into account. So I think it's difficult to say that any of these decisions were about a very specific proclamation. I think that they were about interpreting Section 201. What does Section 201 say? Is there an interplay? Well, if there's an interplay with anti-dumping, there's certainly the same interplay with other remedial duties, 337 and all of the others. I think it's very difficult to step back from the decision in Stainless Steel Wire Rod where they were specifically saying, I, the Commerce Department, am interpreting the law that I administer. And I'm interpreting the term United States import duties. I think they're entitled to deference on that interpretation. And I don't think that they meant, oh, we're only interpreting them in light of Section 201. In fact, they go out of their way to say that's not what they're doing. They start with the anti-dumping statute. I think we're going over all the ground, and you're running out of time now. Thank you, Your Honor. Thank you, and thanks to all counsel, cases submitted.